Dear Mayor McHugh:
You have requested the opinion of the Attorney General concerning a proposed contractual agreement between East Baton Rouge Parish School Board ("School Board") and The Primary Place Laboratory School, Inc. ("Primary Place") for the development and management of an out-come based school in East Baton Rouge Parish. You've asked this office to address the validity of such an agreement which would include the following provisions:
 1. The Primary Place Laboratory School, Incorporated would serve as a laboratory-demonstration school for the East Baton Rouge Parish Public School System, and as such, be eligible for Minimum Foundation Program funds and any other of the normal services rendered to a public school;
 2. The Primary Place Laboratory School, Incorporated Board of Directors would exercise full governance over The Primary Place Laboratory School, as per the written agreement with the East Baton Rouge Parish School Board;
 3. The Primary Place Laboratory School, Incorporated, which is in the process of filing for 501(c)(3) non-profit status, would become its own Local Educational Agency (LEA).
According to the information supplied to this writer for purposes of preparing this opinion, the proposed agreement between the Primary Place and the School Board will include the following terms which are pertinent to the issues at hand.
The Primary Place is substantially similar in purpose and design to "charter" school programs presently operating in other states. The Primary Place is a private non-profit corporation. Its purposes are to improve public learning, through holistic learning methodologies and new forms of measuring pupil out-comes, and to create new professional opportunities for teachers. Further, the alternative methodologies which prove to be successful can be subsequently incorporated into the regular public school system.
The management and administration of the Primary Place, shall be exclusively within the control of a Board of Directors ("the Board"). The East Baton Rouge Parish School Board will have no authority, administrative, financial or otherwise, over the Primary Place. The Board of Directors will exercise budgetary responsibility for all expenditures made by the Primary Place. It will assume all powers granted to a school board under the law which are deemed reasonably necessary to accomplish its obligations under the proposed agreement.
The Board will have the exclusive authority to hire, fire, and set the salaries of the Primary Place teaching staff and all of its other employees. The Board shall approve all teaching methodologies and extracurricular activities. Student admission to the Primary Place will be based on the recommendations of principals, teachers, parents and community leaders from the East Baton Rouge Parish School System. Students will be ranked for admission purposes on the basis of student and family needs, as well as demographic criteria. Tuition to the Primary Place will be free.
According to the proposed agreement, the Primary Place curriculum will comply with that curriculum which is in place in the East Baton Rouge Parish School System. Any changes in that curriculum will be subject to the approval of the State Board of Elementary and Secondary Education ("State Board"). The Primary Place will comply with Louisiana laws dealing with health and safety requirements, student immunization, nondiscriminatory practices, student discipline, and the public school fee law.
The Primary Place will be considered a school district for purposes of tort liability and will maintain such insurance as is required to insure such liability.
The East Baton Rouge Parish School board may refuse to renew its agreement with the Primary Place at the end of the contract term or terminate it unilaterally at any time for the following reasons:
 (1) Failure to meet the requirements for pupil performance contained in the contract and;
 (2) Failure to meet generally accepted standards of fiscal management.
The Primary Place would be entitled to ninety days notice of such action and could request a hearing on such termination/nonrenewal within thirty days of the notice given.
Your first inquiry concerns the eligibility of the Primary Place to receive Minimum Foundation Program funds ("MFP" funds). Article 8, Section 13(B) of the La. Const. (1974) provides in pertinent part:
 The State Board of Elementary and Secondary Education, or its successor, shall annually develop and adopt a formula which shall be used to determine the cost of a minimum foundation program of education in all public elementary and secondary schools as well as to equitably allocate the funds to parish and city school systems. Such formula shall provide for a contribution by every city and parish school system. Prior to approval of the formula by the legislature the legislature may return the formula adopted by the board to the board and may recommend to the board an amended formula for consideration by the board and submission to the legislature for approval. The legislature shall annually appropriate funds sufficient to fully fund the current cost to the state of such a program as determined by applying the approved formula in order to insure a minimum foundation of education in all public elementary and secondary schools. (Emphasis added).
According to the language of Article 8 Section 13(B), MFP funds are intended for public elementary and secondary schools of this State. Thus, in order for the Primary Place to receive such funds it must be considered a public school for purposes of this constitutional provision.
The legislature has the constitutional authority to provide for public education in this State. Article 8, Section 1 La. Const. (1974). This authority is delegated to local parish school boards pursuant to Article 8, Section 9 of the La. Const. (1974).
In furtherance of this delegated authority, school boards are given general powers and duties for the administration of public education. LSA-R.S. 17:81 and 17:151. In addition to those powers directly delegated, schools boards also possess such implied powers and authority as are necessarily and properly incident to performance of its statutory duties. Shaw v. Caddo Parish School Board, 347 So.2d 39 (La.App. 2d Cir. 1977).
Further, The city and parish school boards of this State operate under the supervision and control of the Board of Elementary and Secondary Education and those laws concerning the public schools which are passed by the legislature. La. Const. (1974) Article 8, Sections 3(A),10.
It is clear from the proposed contractual terms stated above that exclusive control over the Primary Place School would be in the hands of a Board of Directors. The Board, by the terms of the agreement, would assume those powers granted to school boards under the law. The only authority that the School Board would have over the Primary Place is the ability to terminate, or to not renew, the contract between the parties.
In addition to its autonomy from the School Board, the Primary Place would also be exempt from many of the laws which govern the public schools of this State according to the proposed agreement. For example, the Primary Place is not bound to follow the minimum salary schedules set for teachers nor would the tenure laws be applicable to their employment.
The Corpus Juris Secundum defines a public school as:
 The term "public school" and "common school" are interchangeable and synonymous, and denote a school which is broadly speaking, open and public to all in the locality, which the state undertakes through various boards and officers to direct, manage, and control, and which is subject to and under the control of the qualified voters of the school district in which it is situate, it is a school which is established and maintained at a public expense. . . .
 More specifically, public or common schools have been said to be schools established under the laws of the state, usually regulated in matters of detail by the local authorities in the various districts, town, or counties, and maintained at public expense by taxation, and open without charge to the children of all the residents of the town or other districts. 78 C.J.S. Schools and School Districts, Section 1.
It is clear that the power to administer, direct and manage the public educational system of this State is in the school boards created for this purpose. The Primary Place would not be under the management and control of the School Board or the State Board according to the proposed agreement. Also, it would not be subject to many of the laws regulating public schools and it would not be freely open to all students in the district in which it would be located.
It is the opinion of this office that according to the facts as presented, the Primary Place would not be considered a public school for purposes of MFP funding under Article 8, Section 13(B), of the La. Const. (1974) and, therefore, would be unable to receive such funds.
It is also the opinion of this office that the School Board does not have the power, explicitly or implicitly, to exempt a school within its jurisdiction from State laws enacted by the legislature, or regulations promulgated by the State Board, pertaining to public schools. Thus, assuming arguendo that the Primary Place were considered to be a public school (i.e. created by the School Board and under its management and control) under the School Board's jurisdiction, the School Board could not give the Primary Place Board of Directors the power to do acts or make decisions which concern matters regulated by state laws or regulations. For example, the School Board could not authorize a public school within its jurisdiction to hire and fire teachers without regard to the teacher tenure laws or the minimum salary schedule set for public school teachers. Therefore, in response to your second inquiry, the School Board may not enter into an agreement for the operation of a public school in which the exclusive control and management of that school rests in the hands of an independent Board of Directors and which is not subject to the laws of this State pertaining to such schools.
In writing this opinion you have referred this writer to programs for laboratory, or out-come based, schools which have been implemented in other states. Two such states are California and Minnesota. In California, the Charter Schools Act of 1992 was passed providing for the establishment of "charter" schools which would utilize new learning methodologies and increase learning opportunities for pupils. They are not subject to the control of laws generally governing school districts, but their charters can be unilaterally revoked for reasons enumerated in the legislation. The California legislation states that for purposes of Article IX, Section 8, of the California Constitution, dealing with funding for school districts, the charter schools are deemed to be under the control of the state's officers who are charged with the administration of the public school system. See CA EDCU, Section 47600 et seq.
The Minnesota legislation provides for out-come based schools to be established by contracts between School Boards and those Directors appointed to govern such out-come based schools. Many of the same terms found in the California legislation are also present in the Minnesota legislation, including exemption from all statutes and rules applicable to school boards and school districts of Minnesota. See Minn. S.A., Section 120.064.
The crucial difference between the California and Minnesota charter school programs and the Primary Place is that the charter schools are authorized by legislative act. Further, the charter schools are deemed to be under the control of each state's appropriate educational authority for purposes of funding.
The Primary Place is not created under the School Board's power, explicit or implicit, to administer public education as an agency of the State and is not a public school. Primary Place is not authorized by statute to receive MFP funds and, thus, absent legislative authority, it cannot be deemed to be a part of the public education system of this state for purposes of Article 8, Section 13(B) of the La. Const. (1974).
There is another important factor relevant to your inquiries which must be noted. According to the court order presently in effect in the case of Davis v. East Baton Rouge Parish School Board 721 F.2d 1425 (CA 5 1983), "No new school shall be constructed, nor shall any addition to an existing school be constructed, without approval of the Court." Thus, any public school which would be opened by the School Board must be done so with approval of the Federal District Court, for the Middle District of Louisiana.
Your last inquiry concerns whether the Primary Place can be considered its own local educational agency under 20 U.S.C. § 24(6). This inquiry is a matter to be determined under federal law and should be directed to the federal government's Department of Education.
In conclusion, it is the opinion of this office that under the proposed agreement between the East Baton Rouge Parish School Board and the Primary Place Laboratory School, Inc., the Primary Place would not be considered a public school for purposes of MFP funds under the Louisiana Constitution, Article8, Section 13(B). In addition, the proposed agreement, by vesting in a board of directors the exclusive control over the Primary Place, would not constitute the creation of a public school in accordance with the School Board's powers. The question of whether the Primary Place may be its own local educational agency for purposes of Title 20 of the federal laws should be directed to the Department of Education of the federal government.
I hope that this sufficiently answers your questions. If you require any further information please feel free to contact this office.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: BETH A. CONRAD Assistant Attorney General
RPI/BAC:pab 0283p